IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01599-REB-CBS

STEPHAN DARRIS,
        Plaintiff,
v.

D/S MAZZAIE,
D/S KEENAN,
D/S BLAIR,
D/S MCCALL, and
SHERIFF GARY WILSON,
        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on Defendants' "Motion to Dismiss and for Partial

Summary Judgment."  Pursuant to the Order Referring Case dated October 24, 2012 (Doc. # 21)

and the memorandum dated January 4, 2013 (Doc. # 46), this matter was referred to the

Magistrate Judge.  The court has reviewed the Motion, Mr. Darris's "Answer to defendants[']

motion to Dismiss . . ." ("Response") (filed April 26, 2013) (Doc. # 64), Defendants' Reply (filed May

28, 2013) (Doc. # 69), the related hearings held on January 30, 2013 and August 20, 2013 (*see*

Courtroom Minutes/Minute Orders (Docs. # 58 and # 73), the pleadings, the entire case file, and

the applicable law, and is sufficiently advised in the premises.


I.        Statement of the Case

        Mr. Darris is an inmate in the custody of the Colorado Department of Corrections ("CDOC").

The claims in the Second Amended Complaint ("SAC") arose out of events that occurred while Mr.

Darris was housed in the Denver Van Cise-Simonet Detention Center.  Mr. Darris brings this case

pursuant to 42 U.S.C. § 1983.  (See SAC (Doc. # 17) at 4 of 17).  In Claim One, Mr. Darris alleges

that "[b]etween March 2012 and the present," Defendant Mazzaie violated his rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.  Mr. Darris alleges that Defendant Mazzaie on "May 19[th] & 26th 2012" denied him kosher meals and religious fasting, on "May 19th & May 26, 2012" desecrated his religious food and items by kicking them, "on or about 5/19/12 & again on or about 5/26/12 and on or about 7/20/12" denied him equal protection by treating him differently that white, heterosexual, non-Jewish inmates and harassed him to the point that he attempted suicide.  (*See* Doc. # 17 at 6-8 of 17).  In Claim Two, Mr. Darris alleges that he was subjected to cruel and unusual punishment "between June 4th thru Sept. 11th 2012" because Defendant Keenan did not conduct rounds according to jail policy and procedure despite knowing that Mr. Darris has a seizure disorder.  He also alleges that Defendant Keenan treated him differently than other inmates and retaliated against him by refusing to accept his grievances and denying him access to the law library.  (*See* Doc. # 17 at 9-11 of 17).   Mr. Darris brings Claim Three against Defendant Wilson, the Denver County Sheriff, alleging that he was subjected to cruel and unusual punishment because the jail's indigent inmate policy provides for only one new pair of socks and underwear every 60 days and for laundering them once per week.   (*See* Doc. # 17 at 12 of 17).  In Claims Four and Five, Mr. Darris alleges that he was denied due process by Defendants Blair and McCall because he was convicted of two disciplinary violations without an opportunity to appear on his own behalf and sanctioned with placement in segregation for 40 and 50 days, respectively.  (*See* Doc. # 17 at 13-14 of 17).[1] He seeks punitive damages, compensatory damages, and injunctive relief.  (*See* Doc. # 17 at 17 of 17).

---

[1]      Mr. Darris's Claim Six and Defendants Horner and Than were dismissed by the court on October 23, 2012.  (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (Doc. # 19)).

II.     Standard of Review

Defendants move to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).  Rule

12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."

Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(6) states that a court may dismiss a complaint for "failure to

state a claim upon which relief can be granted."  To withstand a motion to dismiss, a complaint

must contain enough allegations of fact "to state a claim to relief that is plausible on its face."  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The burden is on the plaintiff to frame "a

complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.

*Twombly*, 550 U.S. at 556.  "Factual allegations must be enough to raise a right to relief above the

speculative level."  *Id.*

Defendants also move for partial summary judgment pursuant to Fed. R. Civ. P. 56 for the

reason that Mr. Darris did not exhaust his administrative remedies.

> Summary judgment is proper when there is no genuine issue as to any material
> fact and the movant is entitled to judgment as a matter of law.  A dispute is "genuine"
> if the issue could be resolved in favor of either party.  A fact is "material" if it might
> reasonably affect the outcome of the case.
> A movant who does not have the burden of proof at trial must show the absence
> of a genuine fact issue.  By contrast, a movant who bears the burden of proof must
> submit evidence to establish every essential element of its claim or affirmative
> defense.  In either case, once the motion has been properly supported, the burden
> shifts to the nonmovant to show, by tendering depositions, affidavits, and other
> competent evidence, that summary judgment is not proper.  All the evidence must be
> viewed in the light most favorable to the party opposing the motion.  However,
> conclusory statements and testimony based merely on conjecture or subjective belief
> are not competent summary judgment evidence.

*Wausau Business Ins. Co. v. U.S. Motels Management, Inc.*, 341 F. Supp. 2d 1180, 1182-83 (D.

Colo. 2004) (citations omitted).

Because Mr. Darris appears *pro se*, the court "review[s] his pleadings and other papers

liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell*

*v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines*

*v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent

3

standards than formal pleadings drafted by lawyers"). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Id.*, at n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate); *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

As the SAC has been sworn to under penalty of perjury (*see* Doc. # 17 at 17 of 17), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).

III.    Analysis

A.    Liability of Defendants in their Individual Capacities

To the extent that Mr. Darris is suing Defendants in their individual capacities, personal

capacity suits seek to impose personal liability upon a government official for actions he or she

takes. *Graham*, 473 U.S. at 165-67.


1.    Exhaustion of Administrative Remedies

Defendants move for dismissal and summary judgment on Mr. Darris's claims on the ground

that he failed to exhaust his administrative remedies under the Prison Litigation Reform Act of

1996 ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a).  The "PLRA's exhaustion requirement applies to

all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  *See also Booth v.

Churner*, 532 U.S. 731, 731-32 (2001) (PLRA requires exhaustion in all matters regardless of

remedy sought and availability of remedy at the agency level).

The PLRA's requirement that an inmate exhaust all available administrative remedies before

initiating suit is mandatory. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no

longer left to the discretion of the district court, but is mandatory.").  *See also Jones v. Bock*, 549

U.S. at 210-212 ("There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court.").  Inmates may not initiate the administrative

grievance process after bringing suit, or try to complete the process while the suit is pending. *See

Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance

process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to

exhaust his administrative remedies.").  "To exhaust administrative remedies an inmate must

properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, -- rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (internal quotation marks and citation omitted). Thus, it is the prison's own grievance procedures that set forth what the prisoner must do in order to exhaust his or her administrative remedies. *Id.*, 549 U.S. at 218 (citation omitted). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Denver County Sheriff Department provides a grievance procedure for inmates. (*See* Denver Sheriff Department Inmate Handbook, Exhibit A-1 to Defendants' Motion (Doc. # 45-1)). The court may take judicial notice of the Denver County Sheriff Department 's administrative process. *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations); *Antonelli v. Ralston*, 609 F.2d 340, 341, n. 1 (8th Cir. 1979) (judicial notice taken of Bureau of Prisons' Program Statement). The grievance procedure requires that an inmate discuss his grievance with the appropriate Housing Officer, send a written request to the appropriate Housing Sergeant, send a grievance to the Watch Commander, complete a Grievance Form, and submit it to the Operations Staff. (*See id.* at 6 of 10). Next, an inmate may write a letter to the Division Chief or the Director of Corrections, stating the specific grievance and all previous steps taken to address the grievance. (*See id.*). Within ten working days of receiving the letter, the Director will reach a final resolution and provide a written, dated response. (*See id.*).

After *Jones v. Bock*, a failure to exhaust administrative remedies constitutes an affirmative defense which must be pled and proved by defendants. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). *But see Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)

("district courts can dismiss prisoner complaints for failure to state a claim if it is clear from the face of the complaint that the prisoner has not exhausted his administrative remedies") (internal citations omitted).

Defendants first argue that to the extent Mr. Darris's claims are based on conduct that he alleges occurred before June 19, 2012, they must be dismissed for failure to exhaust administrative remedies before the filing of his initial Complaint.  Mr. Darris signed his initial Complaint on June 16, 2012.  (*See* Doc. # 1).  At the court's direction, he filed an Amended Complaint on September 17, 2012 and his SAC on October 5, 2012.  (*See* Docs. 6, # 13, # 14, and # 17).  Defendants argue that Mr. Darris's SAC, filed on October 5, 2012, "does not change the relevant date, *i.e.*, commencement of the action, for determining whether available remedies have been exhausted."  (*See* Defendants' Reply (Doc. # 69 at 2 of 11).

The cases cited by Defendants did not interpret the PLRA as requiring that claims brought in an amended complaint be exhausted prior to the filing of the original complaint.  *See Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003) (dismissing claims that were not fully exhausted at time of filing of initial and only complaint);  *Sparks v. Foster*, No. 06-1113, 241 F. App'x 467, 471-72 (10th Cir. June 19, 2007) (affirming summary judgment for failure to exhaust administrative remedies before filing of amended pleading);  *McAdoo v. Terhune*, No. 01-16997, 54 F. App'x 664, at * 1 (9th Cir. 2003) (dismissing lawsuit that was not fully exhausted until more than three months after filing of initial and only complaint);  *Tia v. Paderes*, 2012 WL 487992, at * 2 (D. Haw. Feb. 14, 2012) (new claims that arose on date that plaintiff signed his proposed amended complaint could not have been administratively exhausted before he filed proposed amended complaint);  *Wilson v. Williams*, No. CIV-09-942-C, 2010 WL 4676994, at ** 2-3 (W.D. Okla. Sept. 24, 2010) (dismissing claims where plaintiff chose not to pursue grievance process through all stages of review before filing his initial and only complaint)).[2]

---

[2]      Copies of unpublished cases cited are attached to this Recommendation.

There is other authority that Mr. Darris need only have exhausted his administrative remedies prior to the filing of his SAC.  *See Rhodes v. Robinson*, 621 F.3d 1002, 1006 (9th Cir. 2010) (" '[t]he filing of the amended complaint was the functional equivalent of filing a new complaint . . . and it was only at that time that it became necessary to have exhausted all of the administrative remedies' perquisite to bringing the new claims in the amended complaint.") (quoting *Barnes v. Briley,* 420 F.3d 673, 678 (7th Cir. 2005) (prisoner properly exhausted claims in his original complaint "and later he raised new, properly exhausted § 1983 claims against new defendants" in his amended complaint));  *Williams v. McElmore*, No. 04-2034, 148 F. App'x 342, 344 (6th Cir. July 27, 2005) ("While a prisoner may not amend his complaint to cure deficiencies in pleading exhaustion, there is no authority for the proposition that, after a prisoner has been allowed to amend his complaint, the district court must only examine the original complaint for sufficiency of pleading exhaustion.") (citation omitted);  *Ajaj v. United States*, No. 03cv01959-MSK-PAC, 2006 WL 1305198, at * 7 (D. Colo. May 11, 2006) ("at least one circuit court has concluded that an inmate may pursue newly exhausted claims in an amended complaint without contravening the objectives of the PLRA" (citing *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (that prisoner raised "claims by amending his complaint in an already pending case . . . .is irrelevant to the objectives of § 1997e(a)")).  The court recommends that Defendants' Motion to Dismiss be denied to the extent that Defendants argue that Mr. Darris's claims based on conduct that occurred before June 19, 2012 must be dismissed for failure to exhaust administrative remedies before he filed his original Complaint on June 19, 2012.  The court proceeds to review Defendants' other arguments for dismissal and for partial summary judgment.

Defendants next submit evidence that Mr. Darris failed to exhaust the requisite administrative remedies as to his claims.  (*See* Exhibit A to Defendants' Motion (Doc. # 45-1), Exhibits A, A-1, and A-2 to Defendants' Reply (Docs. # 69-1, # 69-2 , and # 69-3).  Mr. Darris

submits copies of some grievances and a list of grievance numbers.  (*See* Doc. # 64 at 7 of 7, 11-14 of 17).

2.      Claim One against Defendant Mazzaie

In Claim One, Mr. Darris alleges that Defendant Mazzaie denied him kosher meals and religious fasting, desecrated his religious food and items by kicking them, denied him equal protection by treating him differently than white, heterosexual, non-Jewish inmates, and harassed him to the point that he attempted suicide.  (*See* Doc. # 17 at 6-8 of 17).  Mr. Darris alleges that these actions occurred "[b]etween March 2012 and the present," on "May 19[th] & 26th 2012," "on or about 5/19/12 & again on or about 5/26/12 and on or about 7/20/12." (*See id.*).  Defendant Mazzaie argues that Mr. Darris did not exhaust his administrative remedies as to the claim against him.

In Grievance No. 10-86395, submitted on May 16, 2012 and addressed to "Kitchen", Mr. Darris complained about being served non-kosher pineapples.  (See Doc. # 69-2 at 1 of 42).  In Grievance No. 10-86420, submitted on May 20, 2012 and addressed to "Kitchen Steward", Mr. Darris complained about being served "non kosher items such as applesauce and pineapples." (*See* Doc. # 69-2 at 2 of 42).  In Grievance No. 10-86396, submitted on May 26, 2012 and addressed to "Major Than", Mr. Darris complained that "every day the kitchen is serving us non kosher items."  (*See* Doc. # 69-2 at 3 of 42).  On June 1, 2012, Mr. Darris filed Grievance No. 10-86417 addressed to "Kitchen Stewards", wherein he complained about being served "unkosher fruit."  (*See* Doc. # 69-2 at 6 of 42).  He did not mention Defendant Mazzaie in any of these four grievances.  Detention Center staff responded to these grievances and to similar concerns.  (*See* Doc. # 69-2 at 1, 3, 4, 5 of 42).

On June 4, 2012, Mr. Darris wrote a 4-page letter to Major Than, wherein he complained about numerous subjects.  (*See* Doc. # 69-2 at 7-10 of 42).  The only complaint he made about Defendant Mazzaie was that "everyone in the red or with [zero] available funds he throws out their

commissary items." (*See id.* at 7-8 of 42).  Mr. Darris did not specify any date or time of Defendant Mazzaie's alleged conduct.  (*See id.*).  On June 4, 2012, Mr. Darris wrote a 6-page letter to Sherriff Wilson, wherein he complained about many subjects.  (*See* Doc. # 69-2 at 11-16 of 42).  The only complaint made about Defendant Mazzaie was that "The Capt. told the Sgt. Maz[zaie] who then told the officer that I spoke on. . . ." (*See id.* at 12 of 42).  Mr. Darris did not specify any date or time of Defendant Mazzaie's alleged conduct.  (*See id.*).  On June 14, 2012, Mr. Darris submitted Grievance No. 10-82442, wherein he complained that Defendant Mazzaie had conveyed information to Captain Brunning, who then conveyed information to inmates.  (*See* Doc. # 69-2 at 36 of 42).  Mr. Darris again mentioned that Defendant Mazzaie "threw away anything & everything . . . during a shake down." (*See id.*).

On June 6, 2012, Mr. Darris submitted Grievance No. 10-83009 addressed to Major Than, wherein he complained of filthy living conditions in the jail, theft of kosher food, and the time allowed to shower, exercise, and use Westlaw, and Grievance No. 10-83012 addressed to "Kitchen", wherein he complained that he was not receiving proper kosher meals.  (*See* Doc. # 69-2 at 17, 23 of 42).  On June 8, 2012, Mr. Darris submitted Grievance No. 10-83010 addressed to Jim Neubert Kitchen", complaining about the food items he received at lunch.  (*See* Doc. # 69-2 at 20 of 42).  On June 9, 2012, Mr. Darris submitted Grievance No. 10-82437 addressed to "Jim Neubert Kitchen Steward", wherein he complained that he received incorrect food items at breakfast that day and every day.  (*See* Doc. # 69-2 at 28 of 42).  He did not mention Defendant Mazzaie or any specific officers in any of these grievances.  Defendants responded to these grievances on June 13, 2012.  (*See* Doc. # 69-2 at 22 of 42;  *see also* 25, 30 of 42 (same)).

Also on June 9, 2012, Mr. Darris wrote a note regarding "items ruined or stolen during packout," wherein he mentioned Deputy Sheriff Auhmiller.  (*See* Doc. # 69-2 at 31 of 42).  On June 13, 2012, Mr. Darris submitted Grievance No. 10-82444 addressed to Captain Cannon,

complaining that the caloric intake on his kosher meal trays was decreasing. (*See* Doc. # 69-2 at 34 of 42). The only officer mentioned was Jim Neubert. (*See id.*).

On June 16, Mr. Darris submitted Grievance Nos. 10-83057 and 10-83058 addressed to Captain Romero, complaining of actions by Sgt. Petit and mentioning that he had already filed a grievance about Defendant Mazzaie "speaking on me after the shakedown" (*see* Doc. # 69-2 at 37-38 of 42). Also on June 16, 2012, Mr. Darris also submitted Grievance No. 10-83046 addressed to Major Than, wherein he complained about conduct by Sgt. Petit and Captain Romero. (*See id.* at 40 of 42).

On June 17, 2012, Mr. Darris submitted an Inmate Message Form that "[a]ll of the guards are trying to take reprisal against me" on unspecified dates and times. (*See* Doc. # 69-2 at 41 of 42). On June 18, 2012, Mr. Darris submitted Grievance No. 10-83047 addressed to "Kitchen", complaining about "either Willingham or Capt. Romero" and the contents of his breakfast trays. (*See* Doc. # 69-2 at 42 of 42). On July 1, 2012, Mr. Darris submitted Grievance No. 10-80383 addressed to "Captain McCall", regarding his wedding band and his eyeglasses "for documentation purposes for civil case # 12cv1599 which will be amended accordingly." (*See* Doc. # 69-3 at 1 of 2). On September 2, 2012, Mr. Darris submitted Grievance No. 10-84768 addressed to "Romero", mentioning "Deputys [sic] not walking in seg." on unspecified dates and "Sgt. Mazzaie started this war against me, . . . ." (*See* Doc. # 69-3 at 2 of 2).

The record before the court does not demonstrate that Mr. Darris filed a grievance with respect to the allegations in Claim One.[3] Defendant Mazzaie is mentioned in only two grievances and two letters. (*See* Doc. # 69-2 at 7-8, 12 of 42, Doc. # 69-3 at 2 of 2). While Mr. Darris relies on Grievance No. 10-82442, the "Date and Time of the Incident" was "6/2/12 thru Present" and does not address conduct by Defendant Mazzaie in March through May. (*See* Doc. # 64 at 2 of

---

[3]     On August 20, 2013, the court permitted Mr. Darris up to August 26, 2013 to submit evidence of any additional grievances he had filed. As of this date, Mr. Darris has not submitted any additional evidence.

17;  Doc. # 69-2 at 36 of 42).  One grievance references conduct that occurred in September of 2012, only one month before Mr. Darris filed his SAC.  The evidence does not demonstrate that any of the grievances were fully exhausted through the entire grievance process.  The grievances that were "for documentation purposes" and sought no remedy do not demonstrate that Mr. Darris exhausted his administrative remedies.  (*See* Doc. # 69-2 at 36 of 42 ("This is just an additional record for the U.S.D. Court");  Doc. # 69-2 at 39 of 42 ('Since no mediation is possible I'll just have them talk to the U.S.D.C. . . .");  Doc. # 69-2 at 40 of 42 (indicating in the "Specific Remedy Sought" section "I am going to write every city council-member, Representative & Senator . . . all the way to Washington . . . .");  Doc. # 69-3 at 1 of 2 ("this is for documentation purposes for civil case # 12cv01599")).  *See Cordova v. Dowling*, No. 12-1364, 2013 WL 4406653, at ** 2-3 (10th Cir. Aug. 19, 2013) (affirming order granting summary judgment where plaintiff's failure "to request a meaningful response, action, or redress. . . constituted a procedural error resulting in the failure to exhaust administrative remedies.") (internal quotation marks and citation omitted).  The grievances do not address the conduct that Mr. Darris alleges by Defendant Mazzaie in Claim One.  Defendants have presented evidence that Mr. Darris did not adequately exhaust his administrative remedies.  Mr. Darris has not met his burden to show that he exhausted his administrative remedies as to the claim he brings against Defendant Mazzaie.

      3.      Claim Two against Defendant Keenan

      In Claim Two, Mr. Darris alleges that he was subjected to cruel and unusual punishment "between June 4th thru Sept. 11th 2012" because Defendant Keenan did not conduct rounds according to jail policy and procedure despite knowing that Mr. Darris has a seizure disorder.  He also alleges that Defendant Keenan treated him differently than other inmates and retaliated against him by refusing to accept his grievances and denying him access to the law library.  (*See*

Doc. # 17 at 9-11 of 17).   Defendant Keenan argues, *inter alia*, that Mr. Darris did not exhaust his administrative remedies as to the claim against him.

On June 4, 2012, Mr. Darris wrote a 6-page letter to Sheriff Wilson, wherein he complained about, *inter alia*, unspecified officers who "refuse to walk" on unspecified shifts.  (*See* Doc. # 69-2 at 12 of 42).   Mr. Darris submitted two grievances on June 9, 2012 addressed to Major Than and Chief Horner regarding his medication, "officers not walking for hours," and "they don[']t even walk like they are supposed to."  (*See* Grievance Nos. 10-82434, 10-82435, Doc. # 69-2 at 32-33 of 42). The only officer mentioned was Captain Swift.  (*See id.* at 33 of 42).   Captain Swift responded to one of these grievances.  (*See id.*).   On June 16, 2012, Mr. Darris submitted Grievance No. 10-83059, wherein he referred to "how many times the Deputies walked from 8:00 a.m. to 5 p.m." and that Defendant Keenan "refused to talk to me" on an unspecified date.  (*See* Doc. # 69-2 at 39 of 42).   This grievance does not address the conduct that Mr. Darris alleges by Defendant Keenan in Claim Two.  (*See* Doc. # 69-2 at 39 of 42).   On September 2, 2012, Mr. Darris submitted Grievance No. 10-84768, mentioning that Defendant Keenan does "not have to walk" on unspecified dates. (*See* Doc. # 69-3 at 2 of 2).   Mr. Darris's general reference to Defendant Keenan and other officers not walking rounds "is far too generic" to state a claim.  *See Smith v. Board of County Commissioners*, 216 F. Supp. 2d 1209, 1223 (D. Kan. 2002) ("plaintiff's allegation is far too generic to support an eighth amendment claim").   The evidence does not demonstrate that any grievances relating to Defendant Keenan were exhausted through the full grievance process.   There are no grievances in the record regarding any seizures that Mr. Darris suffered, which is the harm he alleges was caused by Defendant Keenan's failure to make rounds.   Mr. Darris has not met his burden to show that he exhausted his administrative remedies as to the claim he brings against Defendant Keenan.

Further, Mr. Darris's allegation that Defendant Keenan did not conduct rounds according to jail policy and procedure does not state a claim to which relief can be granted.   "[A] failure to

adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)). *See also Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir.2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim under § 1983.") (citations omitted).

4.     Claim Three against Defendant Wilson

In Claim Three, Mr. Darris alleges that Defendant Wilson subjected him to cruel and unusual punishment because the jail's indigent inmate policy provides for only one new pair of socks and underwear every 60 days and for laundering them once per week. (*See* Doc. # 17 at 12 of 17). Mr. Darris's Claim Three fails because he failed to properly exhaust his administrative remedies and he fails to state a claim to which relief can be granted for violation of the Eighth Amendment.

On June 8, 2012, Mr. Darris submitted Grievance No. 10-83011 addressed to Chief Horner, raising complaints that the living conditions were filthy, including a complaint of "[t]he same clothes for a week & no laundry svcs. for undergarments." (*See* Doc. # 69-2 at 26 of 42). Detention center staff responded to this grievance on June 16, 2012, noting that Mr. Darris "sought no specific remedy." (*See* Doc. # 69-2 at 27 of 42). Mr. Darris's single grievance on the matter of laundry did not suffice to exhaust his administrative remedies as to Claim Three. First, the record shows no completion of the grievance process regarding Mr. Darris's claim that he received only one new pair of socks and underwear every 60 days and laundering once per week. Second, the grievance reflects numerous general complaints regarding cleanliness, deodorant, lotion, clothing, laundry, inmate tier porter, exercise, showers, Westlaw, and asks only that the "DDC Annual monetary budget for the fiscal year 2011-2012 be posted." (*See* Doc. # 69-2 at 26 of 42). Mr. Darris's failure to seek any relevant remedy in the grievance is a procedural error that results in failure to exhaust administrative remedies. *See Cordova v. Dowling*, 2013 WL 4406653, at ** 2-3. Defendant Wilson

is entitled to summary judgment on Claim Three because Mr. Darris has not demonstrated that he exhausted his administrative remedies.

Further, Mr. Darris's Claim Three fails to state a claim to which relief can be granted for violation of the Eighth Amendment. The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement. The Constitution, however, "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Prison officials must merely ensure that inmates receive adequate food, clothing, shelter and medical care, plus must " 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). *See also Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (jail officials must ensure that inmates receive "reasonably adequate ventilation, sanitation, bedding, hygiene materials . . . hot and cold water, light, heat, and plumbing.").

An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation," hence requiring that the deprivations sustained by a prisoner be "extreme deprivations." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). *See also Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (The Eighth Amendment is violated by conditions of confinement that amount to a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities."). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm. *See Farmer*, 511 U.S. at 835-36;

15

*Wilson*, 501 U.S. at 303.  An inmate may satisfy the subjective component by demonstrating that prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components.

The court concludes that Mr. Darris's allegations fail to state a claim that Defendant Wilson subjected to him to a substantial risk of serious harm as a result of the prison laundry procedures. *See, e.g., Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004) (holding that prison laundry that required inmates to wash their own clothes with bar soap was not sufficiently serious to implicate the Eighth Amendment); *Metcalf v. Veita*, No. 97–1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *Tapp v. Proto*, 718 F.Supp.2d 598, 619 (E.D.Pa. 2010) (inmate forced to wear dirty, torn and stained undergarments during his confinement did not state a constitutional violation); *Young v. Berks County Prison*, 940 F. Supp. 121, 123-24 (E.D.Pa 1996) (noting there was no Eighth Amendment violation when inmate's clothing was occasionally dirty or torn so long as his health was not imperiled); *Martin v. Lane*, 766 F.Supp. 641, 648 (N.D.Ill. 1991) (deprivation of laundry services and hygienic supplies for between three and eighteen days did not constitute a violation of a prisoner's Eighth Amendment rights); *Morris v. George*, No. 13-00029, 2013 WL 2384330, at * 3 (M.D. Tenn. May 30, 2013) ("[a]lthough one change of outerwear for three weeks is undesirable," prisoner who was required to wear the same prison uniform for three weeks in a row, but did not allege that he was unable to bathe or to launder his uniform on a regular basis, nor allege any injury resulting from the jail's one-time failure to provide more than one change of clothing for three weeks, did not allege an actual injury or that the lack of proper clothing amounted to deliberate indifference to his health or safety); *Myers v. City of New York*, No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *8 (S.D.N.Y. Aug. 29, 2012) (no due process violation when prisoner claimed clean

clothes were in short supply but did not allege he was denied opportunity or means to clean clothes himself); *McKnight v. Northern Nevada Correctional Center*, No. 3:09-cv-00757-LRH-VPC, 2010 WL 4005547, at *3 (D.Nev. Oct. 8, 2010) (no Eighth Amendment violation when inmate allowed one set of clothing for six months and prison then refused to replace new clothing that was lost in laundry); *Jones v. Schouppe*, No. 06-1083, 2008 WL 163049, at * 4 (W.D. Pa. Jan. 15, 2008) (denial of new clothing is at most inconvenience, discomfort or indignity incidental to prison life, not a constitutional violation); *Miller v. Brown*, No. 07-2020 (JLL), 2007 WL 1876506, at * 4 (D.N.J. June 26, 2007) ("While any person's desire for spotless cleaning, perfect washing facilities and weekly laundry service is understandable, lack of such niceties cannot amount to a violation of constitutional magnitude."). Mr. Darris does not allege that he was unable to bathe or wash his clothes himself. Nor does he allege he was subjected to a substantial risk of serious harm. Claim Three regarding the frequency of receiving new socks, underwear, and laundry service is properly dismissed for failure to state a claim to which relief can be granted for violation of the Eighth Amendment.

     5.     Claims Four and Five against Defendants Blair and McCall

In Claims Four and Five, Mr. Darris alleges that he was denied due process by Defendants Blair and McCall because he was convicted of two disciplinary violations without an opportunity to appear on his own behalf and sanctioned with placement in segregation for 40 and 50 days, respectively. (*See* Doc. # 17 at 13-14 of 17). Defendants argue that Mr. Darris fails to state a claim to which relief can be granted for violation of the Fourteenth Amendment and failed to exhaust his administrative remedies.

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' " *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV). "A due process claim under

the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).  When a punishment implicates a liberty interest, prisoners are entitled to some due process protections in prison disciplinary proceedings. They are not, however, entitled to "the full panoply of rights due a defendant" in a criminal prosecution.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

In *Sandin v. Conner*, the Supreme Court held that an inmate's liberty interest is protected under the Due Process Clause if the restraints or conditions imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995).  The Tenth Circuit Court of Appeals has ruled that liberty interest claims by prisoners are "to be reviewed under *Sandin*'s  atypical-and-significant-deprivation analysis."  *Steffey*, 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (other citations omitted)).  "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224 (alteration in original, quoting *Sandin*, 515 U.S. at 486).  "[T]he touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life."  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing Sandin, 515 U.S. at 485-87).

The Tenth Circuit has identified relevant factors to consider when determining whether placement in administrative segregation implicates a protected liberty interest: (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or

rehabilitation; (2) [whether] the conditions of placement are extreme; (3) [whether] the placement increases the duration of confinement . . . ; and (4) [whether] the placement is indeterminate." *DiMarco*, 473 F.3d at 1342.  "While courts in this circuit have used these factors to guide the liberty interest analysis, we have never suggested that the factors serve as a constitutional touchstone." *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012) (citations omitted).  And "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts."  *DiMarco*, 473 F.3d at 1342 (citation omitted).

Here, Mr. Darris alleges that he was sanctioned with placement in segregation for 2 determinate periods of 40 and 50 days.  While Mr. Darris challenges the factual basis for one of his disciplinary sentences, he alleges the sentences were imposed for ostensible violation of prison rules.  He does not allege that the disciplinary sanctions affected the duration of his sentence.  Nor does he allege any facts regarding the typical conditions of confinement at the facility where he was held in disciplinary segregation or that the conditions of his confinement in disciplinary segregation were atypical in relation to the ordinary incidents of prison life.  Mr. Darris thus fails to state a liberty interest.  Further, his 40 and 50 day disciplinary sentences do not create a cognizable liberty interest that triggers the protections of due process.  *See Gaines v. Stenseng*, 292 F.3d 1222, 1226 (10th Cir. 2002) ("Finally, we note that the holding in this case is limited to the length of the seventy-five day disciplinary segregation.  Disciplinary segregation for some lesser period could fail as a matter of law to satisfy the atypical and significant requirement in a case in the future." (internal quotation marks and citation omitted));  *Meek v. Jordan*, No. 13-1249, 2013 WL 4427200, at * 3 (10th Cir. Aug. 20, 2013) (plaintiff failed to plead "any facts that would plausibly indicate that 60 days in disciplinary segregation is atypical in relation to the ordinary incidents of prison life") (citing *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (two months in punitive segregation did not trigger a liberty interest);  *Scott v. Hobbs*, No. 2:12CV00190 SWW-BD, 2013

WL 1367324, at * 2 (E.D. Ark. March 25, 2013) ("Placement in punitive isolation for a relatively short interval, even if it means a temporary suspension of privileges while so confined, is not the type of 'atypical and significant' hardship that triggers the protection of the due process clause." (citing *Phillips v. Norris*, 320 F.3d at 847-48 (8th Cir. 2003) (holding that thirty-seven days in isolation for a disciplinary charge was not an atypical and significant hardship under *Sandin* ) and *Wycoff v. Nichols*, 94 F.3d 1187, 1189-90 (8th Cir. 1996) (finding no liberty interest where prisoner served forty-five days in administrative segregation before disciplinary decision was reversed)); *Watson v. St. Louis City Justice* Center, No. 4:11-CV-86-AGF, 2011 WL 539152, at * 2 ((E.D. Mo. Feb. 8, 2011); *Rainer v. Westbrooks*, No. 04-2296DP, 2005 WL 1181940, at * 6 (W.D. Tenn. May 17, 2005) (45 days spent in punitive segregation as a result of disciplinary charges did not "impose[ ] atypical and significant hardship . . . in relation to the ordinary incidents of prison life.") (internal quotation marks and citation omitted); *Scott v. Crowley County Correctional Facility*, No. 03-1253, 2003 WL 22093917, at * 2 (10th Cir. Sept. 10, 2003) (65 days in segregation did not impose an "atypical and significant hardship in relation to the ordinary incidents of prison life"); *Barkus v. Kaiser*, No. 00-7044, 2000 WL 1346226, at * 2 (10th Cir. Sept. 19, 2000) (inmate's thirty-three day placement in behavior modification program that restricted his television and movement privileges did not impose significant hardship on inmate sufficient to create a liberty interest); *Blum v. Fed. Bureau of Prisons*, No. 98-1055, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (ninety-day disciplinary detention in segregation did not differ in degree and duration from ordinary incidents of prison life to create a protected liberty interest); *James v. Wiley*, No. 97-6056, 1997 WL 606985, at * 2 (10th Cir. Oct. 2, 1997) (inmate failed to show that his placement in administrative segregation for forty days was atypical of ordinary incidents of prison life and thus failed to establish that protected liberty interest was involved); *Webb v. Artuz*, No. 93 Civ. 5985 (DLC), 1996 WL 452260, at *4 (S.D.N.Y. Aug. 8, 1996) (forty-five days in segregated confinement did not impose an atypical and significant hardship).

Without an underlying liberty interest, Mr. Darris was not entitled to the procedural protections he alleges he was denied.  Mr. Darris's Claims Four and Five for violation of due process are deficient as a matter of law based on the absence of a protected liberty interest.

Further, the record before the court demonstrates that Mr. Darris did not exhaust his administrative remedies as to these two claims prior to filing suit.  There are no grievances in the record that address the issues raised in Claim Four and Five.  Mr. Darris makes several arguments regarding exhaustion of his claims.  He argues generally that the Detention Center's grievance procedures are ambiguous.  (*See* Doc. # 64 at 4 of 17).  This argument has been addressed and rejected.  *See Darris v. McCall et al.*, No. 12-cv-02685-REB-CBS, 2013 WL 3381273, at * 1 (D. Colo. July 8, 2013) (finding "nothing ambiguous or unclear about the required procedures, which provide plainly that the required steps 'shall be taken.' ").  Mr. Darris argues that he was permitted to file grievances on plain paper.  (*See* Doc. # 64 at 6 of 17;  audio recording of hearing held August 20, 2013).  The court has reviewed any grievances written on plain paper that are before it. (*See, e.g.,* Doc. # 69-2 at 7, 11, 18-19 of 42).  Mr. Darris presents a list of grievances he has filed. (*See* Doc. # 64 at 7 of 17;  audio recording of hearing held August 20, 2013).  The court has reviewed the listed grievances listed that are in the record and found that none of them effectively exhausted the claims in the SAC.  The mere listing of additional grievance numbers without any information as to their content does not suffice to defeat Defendants' Motion.  Mr. Darris argues that his history of filing a multitude of grievances shows that he must have filed grievances for the claims in this case.  (*See* audio recording of hearing held August 20, 2013).  However, "the doctrine of substantial compliance does not apply" to exhaustion under the PLRA.  *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (citing *Jernigan*, 304 F.3d at 1032 (rejecting assertion that inmates need not properly complete the grievance process or correct deficiencies in their grievances).  The multitude of Mr. Darris's grievances makes the record less clear as to what claims he has exhausted.  Mr. Darris submits a purported grievance that was mailed to Chief

21

Horner on October 22, 2012, after he filed his SAC, and thus could not have been exhausted.

(See Doc. # 64 at 12 of 17).   In sum, Mr. Darris's arguments and evidence do not cure the legal

deficiency that he failed to exhaust the required administrative grievance procedures as to the

claims in his SAC.


6.     Qualified Immunity

Defendants in their individual capacities raise the defense of qualified immunity.  Whether a

defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813

(10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-
> pronged inquiry. First, a court must decide whether the facts that a plaintiff has
> alleged or shown make out a violation of a constitutional right. Second, . . . the court
> must decide whether the right at issue was clearly established at the time of the
> defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and

citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the

two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand."  *Id*. "Qualified immunity is applicable unless" the

plaintiff can satisfy both prongs of the inquiry. *Id*.

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff

to show that (1) the defendant violated a constitutional or statutory right and (2) the constitutional

or statutory right was clearly established when the alleged violation occurred. *Verdecia v. Adams*,

327 F.3d 1171, 1174 (10th Cir. 2003).  As the court concludes that Mr. Darris fails to state any

plausible constitutional violation, Defendants in their individual capacities are entitled to qualified

immunity.  The court need not reach the "clearly established" prong of qualified immunity to

conclude that Mr. Darris's claims fail as against Defendants in their individual capacities.  *See*

*Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of

defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

B.  Liability of Defendants in their Official Capacities

Mr. Darris indicates that he is suing Defendants in both their official and individual capacities.  (*See* Doc. # 64 at 10 of 17).  Section 1983 claims against the Defendants in their official capacities must be treated as claims based on municipal liability against the City and County of Denver.  *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978) (noting "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent");  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity");  *Johnson v. Board of County Commissioners for County of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) (an official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent") (internal quotation marks omitted);  *Drake v. City and County of Denver*, 953 F. Supp. 1150, 1156 (D. Colo. 1997) ("a suit against a municipal employee in his 'official capacity' is the same as a suit against the City") (citation omitted).

"[T]o establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."  *Jenkins v. Wood*, 81 F.3d 988, 993–94 (10th Cir. 1996) (citation omitted).  "If the plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must demonstrate the municipality's inaction resulted from deliberate indifference to the rights of the plaintiff."  *Id.* at 994 (internal quotation marks and citation omitted).  Moreover, a municipality can be held liable under Section 1983 "if the final policymaker, as identified by statute, is the one who takes the unconstitutional action."  *Melton v. City of Oklahoma City*, 879 F.2d 706, 724 (10th Cir. 1989) (citation omitted).

Mr. Darris does not plead sufficient facts suggesting the existence of a municipal custom or policy and a direct causal link between the custom or policy and the violations he alleges.  He does not allege that any of the allegedly unconstitutional acts were in any way connected with each other or rose to the level of a custom or policy, rather than simply deprivations disconnected from any wider scheme.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("longstanding practice or custom" is "standard operating procedure of the local governmental entity").  Mr. Darris merely alleges separate incidents of unconstitutional conduct with no relation to City and County of Denver customs and/or policies.  As Mr. Darris fails to plead sufficient facts to support a finding of liability against the City and County of Denver, his claims against Defendants in their official capacities are properly dismissed for failure to state a claim to which relief can be granted.

C.      Request for Injunctive Relief

In addition to money damages, Mr. Darris seeks prospective injunctive relief in the form of "underwear policy & procedure, implementation of 'disciplinary due process', additional training for safety and security walks", and "policy review on legal mail procedure." (*See* Doc. # 17 at 17 of 17).  At the time Mr. Darris filed this lawsuit, he was incarcerated at the Denver Van Cise-Simonet Detention Center.  He is currently incarcerated at the San Carlos Correctional Facility of the CDOC.  Mr. Darris's request for injunctive relief falls squarely within the mootness doctrine, as any injunctive relief directed to Defendants would have no practical impact now that he is no longer incarcerated at the Denver Detention Center.  *See*, *e.g.*, *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (dismissing as moot a prisoner's First Amendment claim for declaratory relief after prisoner was transferred to a different prison);  *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (prisoner's transfer to another prison mooted his claims for injunctive and declaratory relief); *White v. State of Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (deeming claims for prospective injunctive relief moot in light of inmate's release on parole);  *Woulard v. Food Service*, 294 F. Supp.

2d 596, 602 (D. Del. 2003) (inmate's transfer from state prison to federal prison mooted his claim for injunctive relief against state prison officials pursuant to § 1983).

Nor is this the type of claim to which an exception to the mootness doctrine applies, as there is no reasonable expectation that Mr. Darris will be subjected to the alleged conduct again. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (recognizing exception to the mootness doctrine where there is a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party") (internal quotation marks and citation omitted). *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."). Mr. Darris's request for injunctive relief is properly dismissed as moot.


Accordingly, IT IS RECOMMENDED that:

1.      Defendants' "Motion to Dismiss and for Partial Summary Judgment" (filed January 4, 2013) (Doc. # 45) be DENIED in part and GRANTED in part.

2.      Summary judgment be entered in favor of Defendants and against Plaintiff on Claims One, Two, Three, Four, and Five for failure to exhaust administrative remedies.

3.      Alternatively, Claims Two, Three, Four, and Five be dismissed for failure to state a claim to which relief can be granted.

4.      All claims against Defendants in their official capacities be dismissed for failure to state a claim to which relief can be granted.

5.      Plaintiff's request for injunctive relief be dismissed as moot.

**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 29th day of August, 2013.

BY THE COURT:

_____s/Craig B. Shaffer_____
United States Magistrate Judge